IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TERRIER MEDIA BUYER, INC. d/b/a COX MEDIA GROUP,<br><br>                Plaintiff,<br><br>   v.<br><br>DISH NETWORK L.L.C.,<br><br>                Defendant. | No. _____ |

## COMPLAINT FOR DAMAGES

Plaintiff Terrier Media Buyer, Inc. d/b/a Cox Media Group ("CMG") brings this Complaint against Defendant DISH Network L.L.C. ("DISH") for copyright infringement. This Complaint is based on CMG's investigation to date. Based on knowledge as to itself and its own actions, and on information and belief as to all other matters, CMG alleges as follows.

## INTRODUCTION

1. DISH is willfully infringing CMG's copyrights by unlawfully capturing and retransmitting broadcast signals from 13 local TV stations owned by CMG. The Copyright Act expressly provides for enhanced statutory damages to punish and deter such brazen and knowing violations of the law.

2. CMG's stations broadcast TV programming to the public for free via over-the-air signals. Many households, however, pay to view this programming through cable, satellite, or internet providers' services. Under federal law, such pay-TV providers must secure broadcasters' consent to retransmit their signals, and must also obtain a license to retransmit copyrighted programming. This is generally accomplished through retransmission consent agreements between broadcasters and pay-TV providers.

3. DISH is a pay-TV provider. It captures broadcast signals from CMG's stations and then retransmits those signals and the copyrighted content that the signals carry to its customers.

4. In the past, DISH has obtained CMG's consent to retransmission and paid to use CMG's exclusive right to publicly perform copyrighted content. However, at 7:00 pm Eastern Time on January 18, 2020, CMG's consent for DISH to retransmit the signals of CMG's stations expired.

5. Despite knowing that CMG had withdrawn its consent, DISH chose to continue capturing and retransmitting the broadcast signals of 13 of CMG's stations. DISH has thereby willfully infringed CMG's copyrights and should be ordered to pay enhanced statutory damages under 17 U.S.C. § 504.

## PARTIES

6. Plaintiff Terrier Media Buyer, Inc. d/b/a Cox Media Group is a Delaware corporation with its principal place of business at 1 Manhattanville Road, Suite 201, Purchase, NY 10577 and headquarters at 223 Perimeter Center Drive, Atlanta, GA 303461.

7. Defendant DISH Network L.L.C. is a Colorado limited liability company with its principal place of business at 9601 S. Meridian Blvd., Englewood, CO 80112. It maintains an office at 500 North Michigan Ave., Suite 1920, Chicago, IL 60611.

## RELEVANT NON-PARTIES

8. Northwest Broadcasting, Inc. is a Delaware corporation with its principal place of business at 2111 University Park Drive, Suite 650, Okemos, MI 48864.

9. NBI Holdings, LLC is a Delaware limited liability company with its principal place of business at 1 Manhattanville Road, Suite 201, Purchase, NY 10577.

**STANDING**

10. CMG has standing to institute this infringement action concerning the exclusive right of public performance because CMG is a "legal or beneficial owner of an exclusive right under a copyright." 17 U.S.C. § 501. In addition, a broadcaster may sue if a satellite carrier violates 17 U.S.C. § 122. *Id.* § 501(f)(1).

**JURISDICTION AND VENUE**

11. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) because this is a civil action seeking damages for copyright infringement under the Copyright Act, 17 U.S.C. § 101 *et seq*.

12. This Court has personal jurisdiction over DISH because it maintains an office within the District, and it has contractually submitted to personal jurisdiction here.

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because DISH maintains an office within the District, and it has contractually agreed to this forum.

**RELEVANT STATUTES**

14. The Copyright Act grants copyright owners several "exclusive rights to do and to authorize" particular uses of their works. 17 U.S.C. § 106. One of these exclusive rights is "in the case of . . . audiovisual works, to perform the copyrighted work publicly." *Id.* § 106(4). This is known as the exclusive right of public performance.

15. TV broadcast stations monetize the copyrighted content that they broadcast over the air for free via advertising revenue and retransmission consent fees paid by, among others, cable, satellite, and internet providers.

16. The Copyright Act provides that the exclusive right to "perform the copyrighted work publicly" under § 106(4) includes the exclusive right to transmit a performance of the work to the public.

3

17. The Copyright Act further states that performing or displaying a work "publicly" means:

> (1) to perform or display it at a place open to the public or at any place where a substantial number of persons outside of a normal circle of a family and its social acquaintances is gathered; or
>
> (2) to transmit or otherwise communicate a performance or display of the work to a place specified by clause (1) or to the public, by means of any device or process, whether the members of the public capable of receiving the performance or display receive it in the same place or in separate places and at the same time or at different times.

*Id.* § 101. Accordingly, the unauthorized transmission of a broadcast containing copyrighted works is an infringement of the exclusive public performance right.

18. The Copyright Act thus brings broadcast retransmissions within the broad scope of the exclusive right of public performance. Moreover, Congress has also passed compulsory licensing schemes to allow the retransmission of broadcasts that contain copyrighted works by certain categories of pay-TV services that meet certain criteria, including: by "cable systems," *id.* § 111(c); by "satellite carriers" retransmitting "distant signals" to "unserved households," *id.* § 119; and by "satellite carriers" transmitting "into the station's local market," *id.* § 122. Each of those compulsory licensing schemes is further conditioned on compliance by the licensee cable system or satellite carrier with the "rules, regulations, or authorizations of the Federal Communications Commission," which include, at the broadcast station's election, negotiation of "retransmission consent" terms pursuant to § 325(b) of the Communications Act. *See* 47 U.S.C. § 325(b).

19. CMG relies on its exclusive rights named in the Copyright Act, and its affiliated stations rely on the retransmission consent regime to earn fees and money from advertising to support broadcast programming.

4

**SUBSTANTIVE ALLEGATIONS**

**I.    The Governing Retransmission Agreement.**

20.    DISH and Northwest Broadcasting, Inc. entered into a retransmission consent agreement dated June 6, 2018 (the "Northwest Retransmission Agreement"). The Northwest Retransmission Agreement governed DISH's retransmission of all local TV stations listed on "Exhibit A" to that Agreement as of June 6, 2018.

21.    The Northwest Retransmission Agreement also provided that any station acquired by Northwest Broadcasting, Inc. or any "Affiliate" after June 6, 2018, would be added to "Exhibit A," "notwithstanding" any other retransmission agreement an acquired station previously had. Critically for this case, this "After-Acquired Stations" provision means that any station acquired by Northwest Broadcasting, Inc.'s parent, NBI Holdings, LLC ("NBI Holdings"), after June 6, 2018, would be added to "Exhibit A" and would be governed by the Northwest Retransmission Agreement, notwithstanding any other retransmission agreement.

22.    On December 17, 2019, Terrier Media Buyer, Inc. acquired NBI Holdings, and subsequently NBI Holdings acquired 13 local TV stations from Cox Enterprises, Inc. and certain of its affiliates (the "Legacy Stations"). The Legacy Stations include:

      a.  WSB, Atlanta, GA (ABC)

      b.  WFXT, Boston, MA (FOX)

      c.  WSOC, Charlotte, NC (ABC)

      d.  WHIO, Dayton, OH (CBS)

      e.  WFOX, Jacksonville, FL (FOX)

      f.  WHBQ, Memphis, TN (FOX)

      g.  WFTV, Orlando, FL (ABC)

      h.  WPXI, Pittsburgh, PA (NBC)

      i. KIRO, Seattle, WA (CBS)

      j. KOKI, Tulsa, OK (FOX)

      k. WAXN, Charlotte, NC (Independent)

      l. WRDQ, Orlando, FL (Independent)

      m. KMYT, Tulsa, OK (MyNetwork)

23. Pursuant to the "After-Acquired Stations" provision, NBI Holdings's acquisition of the Legacy Stations automatically added them to "Exhibit A" of the Northwest Retransmission Agreement, "notwithstanding" any agreement the Legacy Stations previously had with DISH.

24. The Legacy Stations had a prior retransmission consent agreement with DISH (the "Legacy Stations Retransmission Agreement"). That Agreement contained a "Station Change in Control" provision that provided for termination of the Agreement if and when the Legacy Stations became governed by any other retransmission agreement.

25. Thus, as a result of NBI Holdings's acquisition of the Legacy Stations and their addition to Exhibit A of the Northwest Retransmission Agreement on December 17, 2019, the Legacy Stations Retransmission Agreement terminated on December 17, 2019.

## II. The Contract Dispute.

26. By its terms, the Northwest Retransmission Agreement was to expire on December 31, 2019. The parties have been negotiating a new retransmission agreement, and agreed to multiple extensions of the Northwest Retransmission Agreement during negotiations. However, when the parties had not reached an agreement at 7:00 pm Eastern Time on January 18, 2020 (the "January 18 Deadline"), the Agreement expired. As of that time, DISH no longer had any CMG station's consent to retransmit its broadcast TV signals.

27. Because DISH could not get what it wanted at the bargaining table, it ran to Illinois state court on January 15, 2020. It filed a verified complaint alleging that, despite the unambiguous contractual language, the Legacy Stations Retransmission Agreement remained in effect for the 13 Legacy Stations. At an *ex parte* hearing on January 15, 2020, the state court entered a temporary restraining order.

28. After receiving submissions and hearing argument from the parties, the state court entered an order on January 24, 2020, maintaining its temporary restraining order. The January 24 order states, however, that it "does not prevent any Defendant [including CMG] from asserting a right to monetary relief for copyright infringement," and that the state court has "take[n] no position as to the effect of this Temporary Restraining Order in any such copyright infringement lawsuit, including one asserting any claim for damages based on a finding of infringement during the period of the Temporary Restraining Order."

29. The state court expressly confirmed on the record during the January 24 hearing that the purpose of the temporary restraining order was not to restrain any defendant, including CMG, from seeking copyright damages that occurred at any time since the Legacy Stations Retransmission Agreement expired according to CMG.

30. CMG then filed a notice of removal removing the state court case to this Court, and filed this copyright infringement lawsuit.

**III. DISH's Copyright Infringement.**

31. DISH has continued to retransmit the signals of the 13 Legacy Stations after CMG withdrew its consent to retransmission as of the January 18 Deadline. DISH has thereby violated the Copyright Act and infringed CMG's copyrights.

32. On January 24, 2020, CMG sent a letter to DISH, attached as Exhibit A, confirming DISH's knowledge that any and all retransmission of the Legacy Stations' signals

after 7:00 pm Eastern Time on January 18 is a willful infringement of the Legacy Stations' copyrights.

33. Based on a reasonable investigation, CMG believes that DISH continues to retransmit the signals of the Legacy Stations as of the date of this Complaint.

34. DISH's copyright infringement has been and continues to be willful. DISH knew that CMG withdrew its consent to retransmission as of the January 18 Deadline. DISH also knows that its continued retransmission after that time was willful and therefore subject to enhanced statutory damages, as evidenced by, among other things, its submissions and statements to the Illinois state court acknowledging that it would be liable for willful-infringement damages if it lost the contract dispute.

35. DISH has also violated 47 U.S.C. § 325 by rebroadcasting without the express authority of the Legacy Stations. And by violating 47 U.S.C. § 325, DISH also violated 17 U.S.C. § 122, because DISH failed to comply with the FCC rules for broadcasting.

## COUNT I
## COPYRIGHT INFRINGEMENT

36. CMG restates and incorporates by reference all of the above Paragraphs as if fully set forth herein.

37. CMG is a legal and beneficial owner of the copyrights of numerous programs that have been broadcast by the Legacy Stations and retransmitted without consent by DISH since 7:00 pm Eastern Time on January 18, 2020.

38. CMG is a legal and beneficial owner of the copyrights of numerous programs that, on information and belief, will be broadcast by the Legacy Stations and retransmitted without consent by DISH after the filing of this Complaint.

39. Each such program is an original audiovisual work that has been or will be fixed in a tangible medium of expression and constitutes copyrightable subject matter within the meaning of 17 U.S.C. § 102. Each such program has been or will be, consistent with the requirements of 17 U.S.C. § 411, registered with the United States Copyright Office.

40. CMG has the exclusive rights under 17 U.S.C. § 106(4) to, among other things, "perform the copyrighted work publicly" and to authorize the public performance of that work.

41. Since the January 18 Deadline, neither CMG nor any other person or entity authorized by CMG have granted permission, authorization, or a license to DISH to exercise any of CMG's exclusive rights, including under 17 U.S.C. § 106(4), with respect to the programs or any other works in which CMG owns copyrights.

42. By continuing to retransmit signals from CMG's stations without CMG's permission, DISH has exercised and will exercise (or has authorized or will authorize others to exercise) CMG's exclusive rights under 17 U.S.C. § 106(4) with respect to the programs or any other works in which CMG owns copyrights.

43. DISH's acts of infringement are willful, in disregard of CMG's rights.

44. As a direct and proximate result of DISH's infringement, CMG has been harmed and is entitled to damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the following relief:

A. Entry of judgment against Defendant on all Counts;

B. An award of compensatory damages and Defendant's profits, or alternatively of maximum statutory damages, in an amount to be determined at trial;

C. An award of pre-judgment interest;

D. An award of post-judgment interest; and

E. Any other legal and equitable relief that the Court deems proper.

Dated: January 24, 2020

Respectfully submitted,

***/s/ Scott Lassar***

Scott Lassar (No. 1586270)
Bruce R. Braun (No. 6206628)
Hille R. Sheppard (No. 6226077)
John M. Skakun III (No. 6297636)
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036
slassar@sidley.com
bbraun@sidley.com
hsheppard@sidley.com
jskakun@sidley.com

*Attorneys for Plaintiff Terrier Media Buyer, Inc. d/b/a Cox Media Group*