IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TERRIER MEDIA BUYER, INC. d/b/a COX MEDIA GROUP,<br><br>    Plaintiff,<br><br> v.<br><br>DISH NETWORK L.L.C.,<br><br>    Defendant. | No. 1:20-cv-583<br><br>Hon. Thomas M. Durkin |

### AMENDED COMPLAINT FOR DAMAGES

  Plaintiff Terrier Media Buyer, Inc. d/b/a Cox Media Group ("Terrier Media") brings this Amended Complaint (the "Complaint") against Defendant DISH Network L.L.C. ("DISH") for copyright infringement. This Complaint is based on Terrier Media's investigation to date. Based on knowledge as to itself and its own actions, and on information and belief as to all other matters, Terrier Media alleges as follows.

### INTRODUCTION

  1. DISH is willfully infringing Terrier Media's exclusive rights under the Copyright Act. DISH is unlawfully retransmitting broadcast signals from 13 local TV stations owned by Terrier Media through its wholly owned subsidiary NBI Holdings, LLC ("NBI Holdings"), and thereby publicly performing the copyrighted works embedded in those signals without any license or other authorization to do so. The Copyright Act expressly provides for enhanced statutory damages to punish and deter such brazen and knowing violations.

  2. Terrier Media's stations broadcast TV programming, including copyrighted programming of which Terrier Media is the legal or beneficial owner, to the public via over-the-

air signals. Many households elect to receive retransmissions of these stations' signals from pay-TV services, including direct-to-home satellite services such as DISH.

3. Under federal law, pay-TV providers like DISH must secure broadcasters' written consent to retransmit their signals. This is accomplished through a written retransmission consent agreement. Pay-TV providers that retransmit broadcasters' signals also must obtain a license to retransmit, and thereby publicly perform, the copyrighted programming embedded in those signals. This is accomplished through a statutory public performance license pursuant to specific provisions of the Copyright Act. That statutory license is conditioned on, among other things, a written retransmission consent agreement.

4. Fees for written retransmission consent agreements are a key way that broadcasters monetize the copyrighted content that they broadcast over the air for free. In the past, DISH has entered into written retransmission consent agreements under which it paid for and received the right to retransmit the signals of Terrier Media's broadcast stations, and as a result also satisfied one of the conditions for the statutory license to publicly perform the copyrighted programming embedded in those signals. However, at 7:00 pm Eastern Time on January 18, 2020, Terrier Media's consent for DISH to retransmit the signals of Terrier Media's stations expired.

5. DISH has nonetheless knowingly chosen to continue retransmitting the signals of 13 of Terrier Media's stations. Because it does not have written consent to this retransmission, DISH has failed to fully comply with the requirements for the statutory license for the copyrighted programming embedded in the retransmitted signals. As a result, DISH has infringed copyrights of which Terrier Media is the legal or beneficial owner, and its infringement is

willful. DISH should be ordered to pay damages, including enhanced statutory damages under the Copyright Act.

## PARTIES

6. Plaintiff Terrier Media Buyer, Inc. d/b/a Cox Media Group is a Delaware corporation with its principal place of business at 1 Manhattanville Road, Suite 201, Purchase, NY 10577 and headquarters at 223 Perimeter Center Drive, Atlanta, GA 303461.

7. Defendant DISH Network L.L.C. is a Colorado limited liability company with its principal place of business at 9601 S. Meridian Blvd., Englewood, CO 80112. It maintains an office at 500 North Michigan Ave., Suite 1920, Chicago, IL 60611.

## RELEVANT NON-PARTIES

8. Northwest Broadcasting, Inc. is a Delaware corporation with its principal place of business at 2111 University Park Drive, Suite 650, Okemos, MI 48864.

9. NBI Holdings, LLC is a Delaware limited liability company with its principal place of business at 1 Manhattanville Road, Suite 201, Purchase, NY 10577.

## STANDING

10. Terrier Media has standing to institute this infringement action against DISH because Terrier Media is the "legal or beneficial owner" of copyrights in numerous television programs that have been or will be exhibited by its broadcast stations and retransmitted by DISH without consent or license, and that have been or will be timely and properly registered with the United States Copyright Office. 17 U.S.C. § 501(b). In addition, Terrier Media has standing to sue DISH for retransmissions of copyrighted works constituting actionable acts of infringement under Section 122 of the Copyright Act. *Id.* § 501(f)(1). Exhibit 1 contains a non-exhaustive, representative list of television programs that are the subject of this infringement action.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) because this is a civil action seeking damages for copyright infringement under the Copyright Act, 17 U.S.C. § 101 *et seq*.

12. This Court has personal jurisdiction over DISH because it maintains an office within the District, and it has contractually submitted to personal jurisdiction here.

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because DISH maintains an office within the District, and it has contractually agreed to this forum.

## RELEVANT STATUTORY SCHEME

14. The Copyright Act grants copyright owners several "exclusive rights to do and to authorize" particular uses of their works. 17 U.S.C. § 106. One of these exclusive rights is, "in the case of . . . audiovisual works, to perform the copyrighted work publicly." *Id.* § 106(4). This is known as the exclusive right of public performance.

15. The exclusive right of public performance includes the right to transmit or retransmit a broadcast signal containing a copyrighted work. The Copyright Act provides that the exclusive right to "perform the copyrighted work publicly" includes the exclusive right:

> (1) to perform or display it at a place open to the public or at any place where a substantial number of persons outside of a normal circle of a family and its social acquaintances is gathered; or
>
> (2) to transmit or otherwise communicate a performance or display of the work to a place specified by clause (1) or to the public, by means of any device or process, whether the members of the public capable of receiving the performance or display receive it in the same place or in separate places and at the same time or at different times.

*Id.* § 101.

16. The Copyright Act defines direct-to-home satellite services like DISH, which capture and retransmit copyrighted works embedded in broadcast signals, as "satellite carriers."

4

*Id.* § 119(d)(6). Section 122 of the Act establishes a statutory (or "compulsory") license under which satellite carriers such as DISH are authorized to retransmit, and thereby publicly perform, copyrighted programming embedded in a station's broadcast signal "into the station's local market" if certain requirements are met. *Id.* § 122. In particular, satellite carriers such as DISH must comply with the "rules, regulations, or authorizations of the Federal Communications Commission" ("FCC"). *Id.*

17. The rules, regulations, and authorizations of the FCC contain specific provisions governing the capture and retransmission of broadcast signals by direct-to-home satellite services like DISH, which are defined as "multichannel video programming distributors" ("MVPDs") in the Communications Act. 47 U.S.C. § 522(13). In particular, Section 325 of the Communications Act and Section 76.64 of the FCC's rules promulgated thereunder require MVPDs such as DISH to secure broadcasters' written consent in order to lawfully retransmit the broadcasters' signals. 47 U.S.C. § 325(b); 47 C.F.R. § 76.64(a). This is commonly referred to as retransmission consent.

18. Although the statutory license provision in Section 122 of the Copyright Act and the retransmission consent provision in Section 325 of the Communications Act each address separate property rights (*i.e.*, the broadcaster's property right in the copyrighted content embedded in its signal and the broadcaster's property right in the signal itself), the two rights are linked under the statutory scheme applicable here. Both rights mean that DISH must have an effective written retransmission consent agreement with Terrier Media and its broadcast stations in order to lawfully retransmit their signals and the copyrighted works embedded in those signals.

**SUBSTANTIVE ALLEGATIONS**

**I.     The Governing Retransmission Consent Agreement.**

19.    DISH and Northwest Broadcasting, Inc. entered into a retransmission consent agreement dated June 6, 2018 (the "Northwest Retransmission Agreement"). The Northwest Retransmission Agreement governed DISH's retransmission of all local TV stations listed on "Exhibit A" to that Agreement as of June 6, 2018.

20.    The Northwest Retransmission Agreement also included what is commonly referred to as an "After-Acquired Stations" provision. The After-Acquired Stations provision states that any broadcast station acquired by Northwest Broadcasting, Inc. or any of its "Affiliates" – including "any person or entity that directly or indirectly (including through one or more intermediaries) controls" Northwest Broadcasting, Inc. – would be added to Exhibit A and would be governed by the Northwest Retransmission Agreement, "notwithstanding" any other retransmission agreement the acquired station previously had with DISH.

21.    Critically for this case, this After-Acquired Stations provision means that DISH agreed that any station acquired by Northwest Broadcasting, Inc.'s parent, NBI Holdings – or, for that matter, by NBI Holdings's parent, Terrier Media – would be added to Exhibit A and would be governed by the Northwest Retransmission Agreement, notwithstanding any other retransmission agreement with DISH.

22.    On December 17, 2019, Terrier Media acquired NBI Holdings, and subsequently NBI Holdings acquired 13 local TV stations from Cox Enterprises, Inc. and certain of its affiliates (the "Legacy Cox Stations"). The Legacy Cox Stations include:

        a.    WSB, Atlanta, GA (ABC)

        b.    WFXT, Boston, MA (FOX)

        c.    WSOC, Charlotte, NC (ABC)

      d.      WHIO, Dayton, OH (CBS)

      e.      WFOX, Jacksonville, FL (FOX)

      f.      WHBQ, Memphis, TN (FOX)

      g.      WFTV, Orlando, FL (ABC)

      h.      WPXI, Pittsburgh, PA (NBC)

      i.      KIRO, Seattle, WA (CBS)

      j.      KOKI, Tulsa, OK (FOX)

      k.      WAXN, Charlotte, NC (Independent)

      l.      WRDQ, Orlando, FL (Independent)

      m.      KMYT, Tulsa, OK (MyNetwork)

23.    Pursuant to the After-Acquired Stations provision, this acquisition of the Legacy Cox Stations automatically resulted in their addition to Exhibit A of the Northwest Retransmission Agreement, "notwithstanding" any agreement the Legacy Cox Stations previously had with DISH.

24.    The Legacy Cox Stations had a prior retransmission consent agreement with DISH (the "Legacy Cox Stations Retransmission Agreement"). That Agreement contained a "Station Change in Control" provision that provided for termination of the Agreement if and when the Legacy Cox Stations became governed by any other retransmission agreement.

25.    Thus, as a result of the Legacy Cox Stations' addition to Exhibit A of the Northwest Retransmission Agreement on December 17, 2019, the Legacy Cox Stations Retransmission Agreement terminated on December 17, 2019.

**II.    The Contract Dispute.**

26.    By its terms, the Northwest Retransmission Agreement was to expire on December 31, 2019. The parties engaged in negotiations regarding a new retransmission

agreement governing all of the stations on Exhibit A to the Northwest Retransmission Agreement – including the Legacy Cox Stations – and agreed to multiple extensions of the Agreement during negotiations. However, when the parties had not reached an agreement at 7:00 pm Eastern Time on January 18, 2020 (the "January 18 Deadline"), the Agreement expired. As of that time, DISH no longer had any Terrier Media station's consent to retransmit its broadcast TV signals.

27. Because DISH could not get what it wanted at the bargaining table, it ran to Illinois state court on January 15, 2020. It filed a verified complaint alleging that, despite the unambiguous contractual language, the Legacy Cox Stations Retransmission Agreement remained in effect for the 13 Legacy Cox Stations. At an *ex parte* hearing on January 15, 2020, the state court entered a temporary restraining order enjoining the defendants in that action from, in particular, "prohibiting [DISH] from retransmitting" the Legacy Cox Stations' signals.

28. After receiving submissions and hearing argument from the parties, the state court entered an order on January 24, 2020, maintaining its temporary restraining order against, in particular, defendants in that action "prohibiting [DISH] from retransmitting" the Legacy Cox Stations' signals. The January 24 order further states that it "does not prevent any Defendant [including Terrier Media] from asserting a right to monetary relief for copyright infringement," and that the state court has "take[n] no position as to the effect of this Temporary Restraining Order in any such copyright infringement lawsuit, including one asserting any claim for damages based on a finding of infringement during the period of the Temporary Restraining Order."

29. The state court expressly confirmed on the record during the January 24 hearing that the purpose of the temporary restraining order was not to restrain any defendant, including

8

Terrier Media, from seeking copyright damages that occurred at any time since the Legacy Cox Stations Retransmission Agreement expired according to Terrier Media:

> MR. LASSAR: Can the order specify that it is not the purpose of the order to restrain the defendants from seeking copyright damages that occurred at any time since – if we're correct, since the contract expired?
>
> THE COURT: Yes, the order can reflect that and will reflect that. I'm not trying to prevent the defendants from having access to the federal courts or to this court in the counterclaim, which by the way, I will say parenthetically, I can handle. But that's up to you. So there you go. Yes, it may, of course, say that.

30. Terrier Media then filed a notice of removal removing the state court contract case to this Court, and filed this copyright infringement lawsuit the same day. The contract case is pending before this Court and is captioned *DISH Network L.L.C. v. Cox Media Group, LLC*, No. 1:20-cv-570.

## III. DISH's Copyright Infringement.

31. DISH has continued to retransmit the signals of the 13 Legacy Cox Stations after the expiration of Terrier Media's grant of retransmission consent to DISH as of the January 18 Deadline. DISH's retransmission of the signals of the 13 Legacy Cox Stations without written consent violates Section 325 of the Communications Act and Section 76.64 of the FCC's rules. As a result, DISH has not satisfied the requirements for the statutory license under Section 122 of the Copyright Act for the copyrighted works embedded in the signals it has retransmitted, and its retransmission has infringed copyrights of which Terrier Media is the legal or beneficial owner.

32. On January 24, 2020, Terrier Media sent a letter to DISH confirming that any and all retransmission of the Legacy Cox Stations' signals after 7:00 pm Eastern Time on January 18

9

is a knowing and willful infringement of the copyrights of the TV programming embedded in those signals. That letter is attached as Exhibit 2.

33. Since then, pursuant to Section 411 of the Copyright Act, Terrier Media has sent advance notices to DISH regarding its willful infringement of the copyrights of TV programming embedded in the Legacy Cox Stations' signals. An example of those notices is attached as Exhibit 3.

34. Based on a reasonable investigation, Terrier Media believes that as of the date of this Complaint, DISH continues to retransmit the signals of the Legacy Cox Stations and thereby to publicly perform the copyrighted content embedded in those signals without any license granted either by Terrier Media or operation of law.

35. DISH's copyright infringement has been and continues to be willful. DISH knew that it no longer had Terrier Media's consent to the retransmission of the Legacy Cox Stations as of the January 18 Deadline, and therefore that it had no license for the public performance of the copyrighted works embedded in the signals, either from Terrier Media or under Section 122 of the Copyright Act. DISH also knows that its continued retransmission after the January 18 Deadline was willful and therefore subject to enhanced statutory damages, as evidenced by, among other things, its submissions and statements to the Illinois state court acknowledging that it would be liable for willful-infringement damages if it loses the contract dispute.

## COUNT I
## COPYRIGHT INFRINGEMENT

36. Terrier Media restates and incorporates by reference all of the above Paragraphs as if fully set forth herein.

37. Terrier Media is a legal or beneficial owner of the copyrights of numerous TV programs that have been broadcast by the Legacy Cox Stations and retransmitted (and thus

publicly performed) by DISH without consent or license since 7:00 pm Eastern Time on January 18, 2020.

38. Terrier Media is a legal or beneficial owner of the copyrights of numerous TV programs that, on information and belief, will be broadcast by the Legacy Cox Stations and retransmitted (and thus publicly performed) by DISH without consent or license after the filing of this Complaint.

39. Each such TV program that has been or will be retransmitted (and thus publicly performed) by DISH without consent or license is an original audiovisual work that constitutes copyrightable subject matter within the meaning of 17 U.S.C. § 102, and has been or will be properly and timely registered with the United States Copyright Office pursuant to Section 411 of the Copyright Act or otherwise.

40. With respect to the TV programs as to which Terrier Media is the legal or beneficial owner, Terrier Media has exclusive rights under 17 U.S.C. § 106(4) to, among other things, "perform the copyrighted work publicly" and to authorize the public performance of that work by others.

41. Since the January 18 Deadline, neither Terrier Media nor any other person or entity authorized by Terrier Media have granted permission, authorization, or a license to DISH to exercise any of Terrier Media's rights, including under 17 U.S.C. § 106(4), with respect to the TV programs or any other works in which Terrier Media legally or beneficially owns copyrights.

42. By continuing to retransmit signals from Terrier Media's stations without consent or license, DISH has exercised and will exercise (or has authorized or will authorize others to exercise) Terrier Media's rights under 17 U.S.C. § 106(4) with respect to the TV programs or any other works as to which Terrier Media is the legal or beneficial owner of copyrights.

43. DISH's acts of infringement are willful, in disregard of Terrier Media's rights.

44. As a direct and proximate result of DISH's infringement, Terrier Media has been harmed and is entitled to damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief:

A. Entry of judgment against Defendant on Count I;

B. An award of statutory damages pursuant to 17 U.S.C. § 504(c) in the maximum amount provided by law, or alternatively at Plaintiff's election an award of Plaintiff's actual damages and Defendant's profits from infringement pursuant to 17 U.S.C. § 504(b), in an amount to be determined at trial;

C. An award of Plaintiff's costs, including reasonable attorney's fees and expenses, pursuant to 17 U.S.C. § 505;

D. An award of pre-judgment interest;

E. An award of post-judgment interest; and

F. Any other legal and equitable relief that the Court deems proper.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury.

Dated: May 28, 2020  Respectfully submitted,

*/s/ Hille R. Sheppard*
Scott Lassar (No. 1586270)
Bruce R. Braun (No. 6206628)
Hille R. Sheppard (No. 6226077)
John M. Skakun III (No. 6297636)
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Telephone: (312) 853-7000

Facsimile: (312) 853-7036
slassar@sidley.com
bbraun@sidley.com
hsheppard@sidley.com
jskakun@sidley.com

*Counsel for Terrier Media Buyer, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 28, 2020, I caused the foregoing to be electronically filed using the CM/ECF system, which will send notice of this filing to all counsel of record.

> */s/ John M. Skakun III*
> John M. Skakun III (No. 6297636)
> SIDLEY AUSTIN LLP
> One South Dearborn
> Chicago, IL 60603
> (312) 853-7000
> jskakun@sidley.com
>
> *Counsel for Terrier Media Buyer, Inc.*