IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TERRIER MEDIA BUYER, INC. ) <br> d/b/a COX MEDIA GROUP, ) <br> ) <br> *Plaintiff*, ) <br> ) <br> v. ) <br> ) <br> DISH NETWORK L.L.C., ) <br> ) <br> *Defendant*. ) | Case No. 1:20-CV-583 <br> Hon. Thomas M. Durkin |

**DEFENDANT DISH NETWORK L.L.C.'S REPLY IN SUPPORT OF
ITS MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Terrier's Opposition (Dkt. No 41) makes clear that the premise of its copyright claim is neither what Terrier originally pled nor what the law allows. The original Complaint was built on a false basis—the idea that DISH needed a private copyright license from Cox. DISH does not. Rather, DISH operates under the statutory license of Section 122 of the Copyright Act. Confronted with this fact, Terrier hastily amended its Complaint. Now the purported copyright infringement claim rests, not on the lack of a private copyright license, but on DISH's non-compliance with a condition of the statutory one. When confronted with the fact that it had not met its pleading burden under Section 122, Terrier backtracked again to claim it only has to meet the burden that would apply if DISH's license were a private one under Section 106 of the Copyright Act. But it is not and, as a result, the Amended Complaint must be dismissed.

The reason is simple. Terrier has not alleged (and could not allege) that DISH is in violation of the rules, regulations, or authorizations of the Federal Communications Commission ("FCC") governing the carriage of television broadcast station signals, as required for a copyright

claim under Section 122. Terrier cannot make this claim because DISH had a valid retransmission consent agreement during the relevant time period. As the Court knows, the TRO issued by the state court preserved the Cox Agreement—including the necessary retransmission consent—in effect until July 22, 2020 at noon Central, when it was dissolved, by which time DISH had stopped retransmitting the Cox Stations.

Terrier may not like the TRO, but it has not shown that the TRO was somehow defective or ineffective to preserve the necessary retransmission consent. Paragraph 5 of the TRO preserved Terrier's copyright claims, but only to the extent those claims are not based on an alleged lack of retransmission consent during the TRO's effectiveness. The issuance of the TRO by the state court, and this Court's request that the parties agree to its extension, did not trespass on federal copyright law: retransmission consent involves a contract that is governed by state law in the first place. Nor did the state court issue an indefinite TRO, since Terrier heeded this Court's request and expressly agreed to its extension. The TRO was thus not dissolved until noon Central on July 22, 2020. Finally, the TRO precludes any finding of willful infringement as a matter of law— Terrier identifies no precedent for its position that DISH could be found to have willfully violated the copyright laws by doing what the TRO permitted it to do.

I.     ARGUMENT

    **A.     Terrier Has Not Alleged a Violation of the FCC's Rules as Required to State a Claim Under Section 122 of the Copyright Act.**

Terrier's Complaint is based on the claim that DISH has committed "actionable acts of infringement under Section 122 of the Copyright Act." Amended Compl. ¶ 10. To show an actionable act of infringement under Section 122, Terrier must show that it has a copyright for its broadcast; its broadcasts have been retransmitted by DISH; *and* DISH is not in "compliance with the rules, regulations, or authorizations of the Federal Communications Commission governing

the carriage of television broadcast station signals." *See* 17 U.S.C. § 122(a)(1)(B). Terrier has not made at least the crucial last showing simply because the relevant FCC rule prohibits retransmission without consent and, until June 22, 2020, Terrier had been prohibited from withholding its consent.

Terrier tries to obfuscate the issue by calling DISH's argument "nonsense" (Opp. at 14)[1] and shifting its focus to elements of copyright claims under other sections of the Copyright Act that do not apply. It cites Section 106 and claims that there are only two elements of an infringement claim—ownership of a valid copyright and copying the work. Opp. at 7. But the *Muhammad-Ali* and *Hirsch* cases cited by Terrier are limited to the two *prima facie* requirements for bringing a copyright claim under Sections 106 and 501 of the Copyright Act. *Muhammad-Ali v. Final Call, Inc.*, 832 F.3d 755, 760 (7th Cir. 2016); *Hirsch v. Complex Media, Inc.*, No. 18 CIV. 5488 (CM), 2018 WL 6985227, at *1 (S.D.N.Y. Dec. 10, 2018) ("Plaintiff Steven Hirsch, a professional photographer, brings this action for copyright infringement, pursuant to 17 U.S.C. §§ 106, 501."). They do not address Section 122 claims. Even if Terrier could state a claim under Section 106, it would still be required to allege a violation of FCC rules, according to Section 122, because its Section 106 claim remains "[s]ubject to Sections 107 through 122." 17 U.S.C. § 106. Neither Mr. Muhammad-Ali nor Mr. Hirsch were claiming violation of a statutory copyright license; the former complained about the creation of a lithograph based on one of his paintings without his permission, and the latter complained about the reproduction of a photograph that had appeared in the newspaper without his permission.

---

[1] DISH did not waive the argument either. It is a plain reading of Section 122. Now that Terrier is in the broadcast industry, it can no longer pretend not to understand how the Copyright Act and the FCC's rules operate.

The cases cited by Terrier cannot support its attempt to shift the pleading burden to DISH for an additional reason: DISH's license is public and available for all to find in the United States Code. As the *Muhammad-Ali* court recognized, placing the burden[2] on the alleged infringer to show that the use was authorized "makes sense" in the context of an *implied* license because "'proving a negative is a challenge in any context' . . . and if there is evidence of a license, it is most likely to be in the possession of the purported licensee." *Muhammad-Ali*, 832 F.3d at 761 (quoting *Vieth v. Jubelirer*, 541 U.S. 267, 311 (2004)). But, as another district court subsequently explained in *Menzel v. Scholastic, Inc.*, this case is of little relevance where, as here, the parties agree that a license exists—the statutory license under Section 122—and the issue is whether the use "had gone beyond the scope of the license." 2019 WL 6896145, at *3 (N.D. Cal. 2019). Indeed, placing the burden on DISH to show that it is in compliance with every single applicable FCC rule is analogous to "proving a negative," whereas Terrier would only be charged with showing a single instance of non-compliance.

Even if pleading the requirements of Section 122 is not a *prima facie* requirement for Terrier and, instead, is an affirmative defense for DISH, the Motion to Dismiss must still be granted. *See Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 692 (7th Cir. 2012) (confirming that a district court can "properly dismiss [a] suit on the basis of an affirmative defense"). As discussed below, Terrier does not contest that the FCC has *not* found DISH in violation of its rules. And a plaintiff must plead specific factual allegations. Neither "bald assertions" nor "vague and conclusory allegations" are accepted as true. *See Morse v. Lower*

---

[2] The statutory provisions in sections 107 to 122 are each largely silent on who bears the burden of proof, *see* Lydia Pallas Loren & R. Anthony Reese, *Proving Infringement: Burdens of Proof in Copyright Infringement Litigation*, 23 Lewis & Clark L. Rev. 621, 678-79 (2019), and Terrier points to no case or legislative history demonstrating that the defendant bears the burden of proof in cases alleging infringement under section 122(a).

*Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997); *Sterling v. Southeastern Pa. Transp. Auth.*, 897 F. Supp. 893, 896 (E.D. Pa. 1995).

Notably, even if Terrier had not been banned from withholding its consent and DISH had retransmitted Terrier's stations without it, the appropriate course of action for this Court would have been to seek the agency's expert advice. *See In re Starnet, Inc.*, 355 F.3d 634, 639 (7th Cir. 2004) (determining issue that turns on the telecommunications statute and its implementing regulations is "the bailiwick of the FCC"); *Allnet Communication Service, Inc. v. National Exchange Carrier Ass'n, Inc.*, 965 F.2d 1118, 1120 (D.C. Cir. 1992) (affirming dismissal of suit by telecommunications carrier "on the ground that the Commission has primary jurisdiction, i.e., that it is best suited to make the initial decision on the issues in dispute, even though the district court had subject matter jurisdiction").[3] But here no such advice is necessary. Because Terrier was prevented by a court order, extended by Terrier's consent, from withholding its consent, the FCC's rule prohibiting retransmission without consent was incapable of being violated. Grudging consent is still consent.

### B. The TRO Precludes Any Finding by this Court that DISH Has Violated the FCC's Rules.

The only reason Terrier gives for why DISH is not in compliance with FCC rules is its opinion that the Cox retransmission consent agreement is no longer valid. Opp. at 9-10. Again,

---

[3] Nothing prevents Terrier from seeking redress from the FCC, and this would give the FCC the opportunity to opine on whether its rules have been violated. *See Kisor v. Wilkie*, 139 S.Ct. 2400, 2412 (2019) (recognizing presumption that "the power authoritatively to interpret its own regulations is a component of the agency's delegated lawmaking powers" and that "the agency that promulgated a rule is in the 'better position [to] reconstruct its original meaning'") (quoting *Martin v. Occupational Safety and Health Review Comm'n*, 499 U.S. 144, 151-52 (1991); *see Writers Guild of America, West, Inc. v. American Broadcasting Co., Inc.*, 609 F.2d 355, 365 (9th Cir. 1979) (finding deferral to the FCC is "essential to further the purposes of the delicately balanced system of broadcast regulation").

Terrier is wrong. As long as the TRO remained in effect—from January 15 to July 22, 2020—that agreement likewise remained "in full force and effect." Dkt. 21-2 (ECF Page 65), Ex. 1 ¶ 2. The whole point of a retransmission *consent* agreement is to secure consent. But under Terrier's reading, the most important term of the agreement would *not* remain "in full force and effect," and DISH would have no right to retransmit the Cox Stations without incurring copyright liability.

The state court plainly did not intend this absurd result. As the court made clear at the January 24 hearing, the TRO was necessary to prevent DISH from having to choose between facing a blackout and a copyright lawsuit:

> Plaintiff could lose the ability to retransmit any broadcasting station signal anywhere in the country[4] *due to an alleged and feared copyright infringement*, or to use their phrase -- and I paraphrase – they'd be out of their minds to try and do so and risk that kind of a damage. . . . .
>
> *Damages for copyright infringement, therefore, could be Draconian and affect DISH's ability to compete in the marketplace*, if at all. DISH will be faced with a Hobson's choice of turning off the Cox signals during the lawsuit with the result that many of its subscribers, fickle as they were and should be, will go elsewhere to get their video fixes. And money can't compensate the loss of goodwill that DISH will sustain while we wait to figure out whether their position is legally right or wrong.

---

[4] Lately, Terrier and its affiliates have taken to arguing that this could not happen. But the House Report that accompanied Section 122 of the Copyright Act—*i.e.*, the source of DISH's statutory license—states that "[f]ailure to fully comply with Commission rules with respect to retransmission of one or more stations in the local market precludes the carrier from making use of the section 122 license." H. Rep. No. 106-464 at 94 (Nov. 9, 1999). It continues, "[A] violation may be proven by showing willful activity, or simple delivery of the secondary transmission over a certain period of time. In addition to *termination of service on a nationwide or local or regional basis*, statutory damages are available up to $250,000 for each 6-month period during which the pattern or practice of violations was carried out." *Id*. at 94-95. (emphasis added). Even if the injunction were only on a regional basis, it might include not only Cox's stations but all other broadcast stations in each region. Cox owns only one of the four major network-affiliated stations in each of its markets. As the state court clearly understood, no distributor would risk such draconian sanctions by continuing to retransmit even one local television broadcast station without consent—either through an agreement or a court order.

Dkt. 21-9 (ECF Page 200), Ex. 8 at 60:22–61:7-16 (emphasis added).  The court concluded that "there's no reason for DISH to walk a razor's edge between business life, death, or even worse, a mediocre existence until we see that the defendants are correct." *Id.* at 66:1-4.

Terrier ignores what the state court actually said and, instead, raises a series of unfounded arguments.  It claims that DISH's reading of Paragraph 2 would eviscerate Paragraph 5, but Paragraph 5 can be read in harmony because it preserves Terrier's ability to bring a copyright claim, so long as the claim is not based on allegations that DISH lacked consent to retransmit the Cox Stations.  This is the only reading that is consistent with the state court's goal of preserving the status quo and its above-mentioned concern regarding a copyright lawsuit against DISH in the absence of a contract or court order preserving consent.  Thus, it is the only reading that comports with the proper interpretative approach here that "all words and provisions . . . should be given effect."  Opp. at 9.

Terrier says harmonizing Paragraphs 2 and 5 in this way would only create conflict with federal copyright law and the rule that temporary restraining orders must be temporary, not indefinite.  Opp. at 9, 11.  But the TRO does not seek to modify or otherwise infringe on the Copyright Act; it simply preserves the *status quo* of contractual consent in a retransmission agreement governed by state law.  *See Teamsters Local Union No. 727 Pension Fund v. Mid-City Parking, Inc.*, No. 17-CV-5767, 2018 WL 6045209, at *2 (N.D. Ill. Nov. 19, 2018) ("Contract interpretation is governed by state law."); *see also DIRECTV, Inc. v. Imburgia*, 136 S.Ct. 463, 468 (2015) ("[T]he interpretation of a contract is ordinarily a matter of state law to which we defer[.]"); Consent to Transfer Control of Certain License Subsidiaries of NBI Holdings, LLC to Terrier Media Buyer, Inc., *Memorandum Opinion and Order*, 34 FCC Rcd. 10554, 10566 ¶ 32 (2019)

7

("[T]he Commission is not the appropriate forum for addressing private contractual matters, such as after-acquired station clauses in retransmission consent agreements.").

Moreover, it was Terrier (and its affiliates) who agreed to an extension of the TRO.[5] The state court, by contrast, plainly had a limited duration in mind: "[T]he difference of duration between a TRO and a preliminary injunction is one where the TRO is meant to last a specific short time. A preliminary injunction maintains the status quo pending trial on the merits, which is why I have to put this over for a hearing to determine, assuming I still have the case, whether this should -- I should issue a preliminary injunction *within a short period of time*." Dkt. 21-9 (ECF Page 201), Ex. 8 at 66:13-20 (emphasis added). Terrier, of course, removed the case later the same day, ensuring that the state court could not follow through on its promise to hold a swift preliminary injunction hearing.

Just as fundamentally, Terrier contends that the TRO affords no protection to DISH if the ultimate ruling in this case is in favor of Terrier. Opp. at 2 ("[I]t does not immunize DISH from the consequences of being wrong about its contractual rights."). It is telling that Terrier offers no support for this proposition because its avenue for relief—moving to dissolve the TRO—was twice rebuffed by the state court. And, shortly afterwards, Terrier consented to extend the TRO. The result Terrier posits would flow from misstatements or other actions by DISH that misled the state court into issuing the TRO; yet Terrier makes no such assertions, because it cannot. Just as tellingly, Terrier does not assert that DISH has not paid Terrier the millions of dollars a month that are due for the retransmission under the Cox agreement. If Terrier could have validly withheld its consent during that period and had done so, it would not have received one cent.

---

[5] Dkt. 60, *DISH Network L.L.C. v. Cox Media Group, LLC, et al.*, No. 20-cv-570 (N.D. Ill.) (Feb. 19, 2020 hearing transcript).

8

### C. Terrier Cannot Show Willful Infringement as a Matter of Law.

Terrier avoids responding to DISH's argument it did not, as a matter of law, commit willful infringement by wishing it away and contending the claim "is not a 'claim' to be dismissed on the pleadings." Opp. at 12. This is only true when there might be a dispute regarding the facts involved. *See Parkman & Weston Assocs., Ltd. v. Ebenezer African Methodist Episcopal Church*, No. 01 C 9839, 2003 WL 22287358, at *1 (N.D. Ill. 2003) ("Dismissal of a complaint is proper only when 'it appears beyond doubt that the plaintiff cannot establish any set of facts which would entitle him to the relief requested.'" (quoting *Caldwell v. City of Elwood, Ind.*, 959 F.2d 670, 672 (7th Cir. 1992))).

Here, there is none. The state court issued the TRO *expressly permitting* DISH to continue to retransmit the signals of the Cox Stations and prohibiting Terrier from interfering with DISH's retransmission rights. Amended Compl. ¶ 27; Dkt. 21-2 (ECF Page 65), Ex. 1 ¶ 2. As precedent uniformly teaches, DISH's continuing exercise of its contractual rights pursuant to court order simply cannot serve as the basis for a finding of willful infringement as a matter of law. *See, e.g., VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 748 (9th Cir. 2019) ("[C]ontinued use of a work even after one has been notified of his or her alleged infringement does not constitute willfulness so long as one believes reasonably, and in good faith, that he or she is not infringing.") (quoting *Evergreen Safety Council v. RSA Network Inc.*, 697 F.3d 1221, 1228 (9th Cir. 2012)); *Amado v. Microsoft Corp.,* 517 F.3d 1353, 1362 (Fed. Cir. 2008) (in patent infringement action where infringing sales took place following the grant of an injunction that was stayed, holding that "willfulness, as such, is not the inquiry when the infringement is permitted by a court-ordered stay"); *Princeton Univ. Press v. Mich. Document Servs., Inc.*, 99 F.3d 1381, 1392 (6th Cir. 1996) (no willfulness where the law of fair use was unsettled and defendants' conduct was not so "unreasonable as to bespeak willfulness").

9

Where, as here, a plaintiff pleads facts that "show that his suit is without merit, 'he has pleaded himself out of court.'" *Brechbill, et al., v. Homes Invest LLC*, No. 17-cv-7313, 2018 WL 4384297, at *13 (N.D. Ill. Sept. 14, 2018) (quoting *Tregenza v. Great Am. Commc'ns Co.*, 12 F.3d 717, 718 (7th Cir. 1993)); *see Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 692 (7th Cir. 2012) (confirming that a district court can "properly dismiss [a] suit on the basis of an affirmative defense").

## II. CONCLUSION

For the foregoing reasons, the Court should dismiss the Amended Complaint with prejudice.

Date:  July 27, 2020                    Respectfully submitted,

                                                        /s/ *Jared R. Butcher*
                                         Pantelis Michalopoulos (*admitted pro hac vice*)
                                         Michael Dockterman (ARDC #: 3121675)
                                         Jared R. Butcher (*admitted pro hac vice*)
                                         STEPTOE & JOHNSON LLP
                                         227 West Monroe, Suite 4700
                                         Chicago, Illinois 60606
                                         Telephone: (312) 577-1243
                                         - and -
                                         1330 Connecticut Avenue, N.W.
                                         Washington, D.C.  20036
                                         Telephone:  (202) 429-3000

                                         *Attorneys for Defendant DISH Network L.L.C.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 27th day of July 2020, a true and accurate copy of the foregoing was served electronically using the Court's CM/ECF system to all counsel of record and parties receiving electronic notice of pleadings filed in this case.

 /s/ *Jared R. Butcher*
Jared R. Butcher