UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TERRIER MEDIA BUYER, INC., d/b/a COX MEDIA GROUP<br>            Plaintiff,<br><br>       v.<br><br>DISH NETWORK, L.L.C.,<br><br>       Defendant. | No. 20 C 583<br><br>Judge Thomas M. Durkin |

## MEMORANDUM OPINION AND ORDER

Terrier Media Buyer, Inc. sued DISH Network for copyright infringement. DISH moved to dismiss. R. 36. DISH's motion is granted.

## Legal Standard

A Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Berger v. Nat. Collegiate Athletic Assoc.*, 843 F.3d 285, 289 (7th Cir. 2016). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*,

550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Tobey v. Chibucos*, 890 F.3d 634, 646 (7th Cir. 2018).

## Background

In June 2018, DISH Network and Northwest Broadcasting, Inc. entered into an agreement that permitted DISH to retransmit various local television stations to its subscribers (the "Northwest Retransmission Agreement"). R. 35 ¶ 19. The Northwest Retransmission Agreement included an "After-Acquired Stations" provision. *Id.* ¶ 20. That provision provides that any broadcast station acquired by Northwest or its affiliates would be governed by the Northwest Retransmission Agreement notwithstanding any other retransmission agreement the station had with DISH. *Id.*

On December 17, 2019, Terrier Media Buyer acquired Northwest's parent company NBI Holdings, and NBI subsequently acquired 13 local television stations from Cox Enterprises (the "Cox stations"). *Id.* ¶¶ 21-22.[1] The Cox stations had previously been governed by a separate retransmission agreement with DISH (the "Cox Retransmission Agreement"). *Id.* ¶ 24. The Cox Retransmission Agreement

---

[1] The order in which these acquisitions closed is the subject of much dispute in the related case pending before this Court, *DISH Network L.L.C. v. Cox Media Group, LLC et al.*, 20-cv-570 (N.D. Ill.). For purposes of this motion, the Court accepts the version of events detailed in Terrier's complaint.

included a "Station Change in Control" provision that provided for the termination of the Agreement if the Cox stations became governed by a different retransmission agreement. *Id.* Under that provision and the Northwest Retransmission Agreement's After-Acquired Stations provision, the Cox stations became subject to the Northwest Retransmission Agreement and the Cox Retransmission Agreement terminated. *Id.* ¶¶ 23-25.

The Northwest Retransmission Agreement was to expire on December 31, 2019. *Id.* ¶ 26. After several extensions during the parties' negotiations regarding the rates DISH would have to pay in a new retransmission agreement, the Northwest Retransmission agreement expired at 7:00 p.m. on January 18, 2020. *Id.* As of that time, Terrier withheld its consent for DISH to retransmit the Cox stations. *Id.*

On January 15, 2020, DISH obtained a temporary restraining order *ex parte* in Illinois state court that enjoined Terrier from prohibiting DISH from retransmitting the Cox stations. *Id.* ¶ 27. After hearing argument from the parties several days later, the state court entered an order on January 24 extending the TRO against Terrier. *Id.* ¶ 28.[2] On the same day that order was issued, Terrier filed this copyright infringement lawsuit. *Id.* ¶ 30. Terrier also sent a letter to DISH stating that any retransmission of the Cox stations after the January 18 expiration of the Northwest Retransmission Agreement is a knowing and willful infringement of the copyrights of that television programming. *Id.* ¶ 32. DISH continued to retransmit

---

[2] Also on January 24, Terrier removed the case to federal court. At a status hearing on February 20, the parties agreed to extend the TRO. *See* 20-cv-570, R. 60. This Court subsequently denied DISH's motion for a preliminary injunction and dissolved the TRO. *See* R. 129.

the Cox stations after the expiration of the Northwest Retransmission Agreement. *Id.* ¶¶ 31, 34. DISH moved to dismiss Terrier's copyright infringement claim.

## Analysis

To state a claim for copyright infringement, Terrier must allege two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Muhammad-Ali v. Final Call, Inc.*, 832 F.3d 755, 760 (7th Cir. 2016) (quoting *Peters v. West*, 692 F.3d 629, 632 (7th Cir. 2012)). DISH does not contend that Terrier has failed to adequately allege those elements. Rather, DISH argues that it has a valid license to retransmit Terrier's copyrighted works. The existence of a license is an affirmative defense to a claim of copyright infringement. *Id.* at 761 (quoting *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 775 (7th Cir. 1996)). Generally, "[c]omplaints need not anticipate or plead around affirmative defenses." *Leavell v. Kieffer*, 189 F.3d 492, 494 (7th Cir. 1999) (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)). However, a motion to dismiss based on an affirmative defense may be granted when "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense[.]" *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005).

The sole issue here is whether DISH had consent to retransmit the Cox stations. Section 122 of the Copyright Act establishes a statutory license for satellite carriers to retransmit copyrighted programming embedded in a television broadcast station's signal into the station's local market. 17 U.S.C. § 122(a)(1). However, the license is conditioned upon satellite carriers' compliance "with the rules, regulations, or authorizations of the Federal Communications Commission governing the carriage

4

of television broadcast station signals." *Id.* § 122(a)(1)(B). FCC rules prohibit multichannel video programming distributors ("MVPDs") like DISH from retransmitting a station's signal without the broadcaster's consent. *See* 47 C.F.R. § 76.64; 47 U.S.C. § 325(b). If a satellite carrier retransmits local broadcast signals without consent in violation of the FCC's rules and regulations, it cannot avail itself of the statutory license and is liable for copyright infringement. 17 U.S.C. 122(d).

DISH argues that it is clear from the face of the TRO, which Terrier references in the complaint, that it had consent to retransmit the Cox stations. R. 21-2 ¶ 2.[3] The Court finds this argument persuasive. The complaint alleges that Terrier began withholding its consent to retransmit the Cox stations on January 18, 2020. But the TRO, which was entered January 15, states that the Cox Retransmission Agreement remains "in full force and effect until further order of this Court." *Id.* Because the Cox Retransmission Agreement gave DISH consent to retransmit the Cox stations, *see* R. 35 ¶ 24, and the TRO expressly kept that agreement in full force and effect, DISH had consent to retransmit the stations during the period in which Terrier alleges copyright infringement.

Terrier argues that the TRO was not intended to prevent it from seeking copyright damages. To support its position, Terrier points to paragraph 5 of the TRO, which states that: "[t]his Order does not prevent any Defendant [including Terrier]

---

[3] The Court may consider the TRO and the TRO hearing transcript without converting DISH's motion to dismiss into a motion for summary judgment both because they are matters of public record and because they are critical to the complaint and referred to in it. *See Geinosky v. City of Chicago*, 675 F.3d 743, 746 n.1 (7th Cir. 2012).

from asserting a right to monetary relief for copyright infringement or Plaintiff from asserting any defenses thereto." R. 21-2 ¶ 5. This language makes clear that the TRO does not enjoin Terrier from filing a lawsuit. *See also* R. 21-9 at 68:9-12 ("I'm not trying to prevent the defendants from having access to the federal courts or to this court in the [copyright] counterclaim."); *id.* at 34:21-35:5 (Q: "I don't think, Judge, that you intended in your TRO to say to the defendants, 'You don't have a right to go to federal court and say, copyright damages.' I don't think you intended that --" A: "You can be assured I didn't say that, and I would never -- I don't think it's enforceable to begin with, and I would never suggest that. You can do what you want."). But nor does the TRO prevent DISH "from asserting any defenses thereto," including that it had consent to retransmit the stations because the TRO kept the Cox Retransmission Agreement in full force and effect.

Terrier contends that it would be nonsensical for the TRO to permit it to file a lawsuit but prevent it from arguing DISH lacked consent to retransmit. But the TRO does not prevent Terrier from making that argument any more than it guarantees it will be successful. Indeed, while Terrier would have the Court interpret the TRO as permitting it to recover copyright damages during the TRO's pendency, the TRO expressly states that "[t]he court takes *no position* as to the effect of this Temporary Restraining Order in any such copyright infringement lawsuit, including one asserting any claim for damages based on a finding of infringement during the period of the Temporary Restraining Order." R. 21-2 ¶ 5 (emphasis added).

6

Importantly, in granting the TRO, the state court wanted to prevent DISH from having to choose between stopping its retransmission of the Cox stations or facing potentially ruinous copyright damages. The court explained that DISH "could lose the ability to retransmit any broadcasting station signal anywhere due to an alleged and feared copyright infringement . . . they'd be out of their minds to try and [retransmit the stations] and risk that kind of a damage because . . . they could lose up to $250 million plus another $35 million every six months in damages. Damages for copyright infringement, therefore, could be draconian and affect DISH's ability to compete in the marketplace, if at all." R. 21-9 at 60:18-61:9. If the TRO permitted Terrier to collect copyright damages during its pendency, it would render meaningless the court's reason for granting it.

Terrier contends that if the TRO prevents it from recovering copyright damages during its pendency, it would impermissibly "override" its copyright rights and "exempt DISH from [its] obligations under federal law." R. 41 at 16. But if DISH is correct that the Cox Retransmission Agreement remains valid and enforceable (as reflected in the TRO keeping that agreement in full force and effect), then DISH *is* complying with its obligation to get consent to retransmit the stations (and paying Terrier for that right). R. 21-7 at 18:21-24; R. 21-9 at 13:7-9. Rather, Terrier's actual argument appears to be that its copyright rights would be violated if it cannot pursue damages and the TRO was entered erroneously – that is, the Cox Retransmission Agreement terminated and so DISH did not have consent to retransmit the Cox stations during the period the TRO was in effect. But an erroneously entered TRO

does not give rise to a separate cause of action for conduct that the TRO permits. *See In re UAL Corp.*, 412 F.3d 775, 779 (7th Cir. 2005) ("A person injured by the issuance of an injunction later determined to be erroneous has no action for damages absent a bond.") (quoting *W.R. Grace & Co v. Rubber Workers*, 461 U.S. 757, 770 n.14 (1983)); *see also Coyne-Delaney Co., Inc. v. Capital Dev. Bd. of State of Ill.*, 717 F.2d 385, 393-94 (7th Cir. 1983).[4] This is for good reason; to permit a party to be sued for relying on a court order would be a grave miscarriage of justice. In sum, because the TRO ordered that the Cox Retransmission Agreement remained in full force and effect, DISH had consent to retransmit the Cox stations during the its pendency. And because Terrier bases its copyright claim on DISH not having had consent to retransmit the stations during that period, its claim fails.

## Conclusion

For the reasons stated, DISH's motion to dismiss [36] is granted. Nevertheless, it is unclear from the record whether DISH continued to retransmit the Cox stations after this Court dissolved the TRO. For this reason, Terrier's claim is dismissed without prejudice. If Terrier believes it has a claim for copyright damages outside of the period of the TRO, it may move for leave to file an amended complaint by October 5, 2020. The motion should attach a redlined comparison between the current complaint and the proposed amended complaint, and should be supported by

---

[4] The state court did not require DISH to post a bond, *see* R. 21-9 at 68:16-18, and Terrier did not raise the issue when that case was removed to federal court. This is perhaps in part because DISH represents that it has continued to pay Terrier (and its affiliates) the monthly retransmission fees required under the Cox Retransmission Agreement while the TRO remained in effect.

a brief of no more than five pages describing how the proposed amended complaint

cures the deficiencies identified here. If no motion is filed by October 5, 2020, the case

will be dismissed with prejudice.

ENTERED:

*Thomas M. Durkin*

_____

Honorable Thomas M. Durkin
United States District Judge

Dated: September 14, 2020

9